UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

:

RAFAEL JIMENEZ,                                                  :

:

                                        Petitioner,             :

:

                     -v-                                         :

:

UNITED STATES OF AMERICA,                                        :

:

                                        Respondent.             :

------------------------------------------------------------------ X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: August 31, 2015          │
└─────────────────────────────────────┘
```

10-cr-316 (KBF)
15-cv-1974 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

The Court has reviewed petitioner Rafael Jimenez's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel.  (ECF No. 110 ("Pet."); ECF No. 116 ("Pet'r's Br.").)[1]  Jimenez pled guilty on November 2, 2011 to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii), 846.  Jimenez was sentenced on April 3, 2012 by this Court to 127 months' imprisonment, plus five years of supervised release.  (ECF No. 92.)  Jimenez appealed his sentence, arguing that the Second Circuit should disregard the appellate waiver in his plea agreement because he did not agree to it knowingly and voluntarily; the Second Circuit dismissed the appeal.  United States v. Jimenez, 552 F. App'x 51 (2d Cir. 2014) (summary order).

Jimenez now argues that he received ineffective assistance of counsel because his lawyer failed to discover and assert an entrapment defense, or to inform him of

---

[1] Unless otherwise noted, all citations to ECF in this Opinion & Order refer to the docket in case no. 10-cr-316.

the same.  He also argues that he did not plead guilty knowingly and voluntarily because his lawyer forced him to do so and because he was expecting a more lenient sentence than he received.  These arguments are wholly without merit, and for the reasons set forth below, Jimenez's motion is DENIED.

No evidentiary hearing is necessary in this action. The combined submissions of the parties provide a sufficient basis upon which to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its view on the facts as alleged by Jimenez, including the details added in his petition.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (court need not hold an evidentiary hearing where the combined submissions of the parties provide a sufficient basis to deny the petition).

I.    BACKGROUND

On April 12, 2010, Jimenez, a former New York City auxiliary police officer, and his co-defendant, Alfredo Rivera, were charged with one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (Count One); one count of extortion under color of official right, in violation of 18 U.S.C. § 1951(a) (Count Two); and one count each of using a firearm in connection with crimes of violence and drug trafficking, in violation of 18 U.S.C. § 924(c) (Counts Three and Four). (ECF No. 1.)  These charges stemmed from their agreement to provide armed protection for a large shipment of cocaine from Long Island to the Bronx, which was in fact a sting operation.  The Government filed a superseding indictment on September 26, 2011, in which Count Two charged Jimenez with attempt to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, instead of

2

extortion under color of official right.  (ECF No. 56.)  This charge stemmed from Jimenez's introduction of confidential information to another individual Jimenez believed to be a supplier of heroin, and his assistance in receiving a package that appeared to be heroin.

On November 2, 2011, Jimenez pled guilty to Count One pursuant to a plea agreement with the Government (the "Plea Agreement").  At his plea hearing before Magistrate Judge Peck on November 2, 2011, and at his sentencing before this Court[2] on April 3, 2012, and at all hearings between those dates, Jimenez was represented by Martin Geduldig.  At his plea hearing, Jimenez stated—among other things—the following while under oath:

- That he had discussed with Geduldig the charges he was facing and how he wished to plead.  (ECF No. 73 ("Plea Tr.") 8:9-11.)

- That he was satisfied with Geduldig's representation of him.  (Plea Tr. 8:12-14.)

- That he understood that Count One carried a maximum sentence of life imprisonment and a mandatory minimum term of ten years' imprisonment, and that he had discussed the U.S. Sentencing Guidelines and other sentencing factors applicable to his case with Geduldig.  (Plea Tr. 7:23-8:8, 10:19-11:4.)

---

[2] This matter was initially assigned to the Honorable Victor Marrero.  It was reassigned to the undersigned on or about November 18, 2011.  (See ECF No. 72.)  The entry on the docket reflecting a reassignment date of May 11, 2015 is inaccurate.

- That he and the Government had stipulated to a Guidelines range of 120 to 135 months' imprisonment as a reasonable sentence, and that this stipulation was not binding on the Court.[3]  (Plea Tr. 16:2-9, 16:24-17:3.)

- That he understood that the Court could give him "a sentence within the guideline range, less than the guideline range, or greater than the guidelines, but of course no greater than the statutory maximum."  (Plea Tr. 12:15-19.)

- That nobody had made any promises to him about what his sentence would be.  (Plea Tr. 15:3-15:6.)

- That the Plea Agreement was translated into Spanish, and that he had discussed it and any questions he had about it with Geduldig.  (See Plea Tr. 15:10-12, 15:19:-22.)

- That he understood under the Plea Agreement he waived his right to appeal or collaterally attack a sentence of 135 months or less.  (Plea Tr. 17:4-10.)

- That he was pleading guilty freely and voluntarily because in fact he was guilty.  (Plea Tr. 18:16-18.)

Additionally, after questioning Jimenez about his medical and mental health background (see Plea Tr. 3:18-5:22), Magistrate Judge Peck confirmed that Jimenez

---

[3] When the Court first inquired whether Jimenez understood that he and the Government had stipulated to this Guidelines range, Jimenez responded that it was "not really very acceptable" because "[i]t [wa]s too much time."  (Plea Tr. 16:6-7.)  Jimenez then stated that he "wasn't very much in agreement, because at the beginning [he] was told lies," specifically that he was "told that [he] would be getting five years and then ten years."  (Plea Tr. 16:21-23.)  Nevertheless, he repeatedly affirmed that he understood his agreement with the Government as to the reasonableness of the Guidelines range.  (See Plea Tr. 16:2-17:3.)

felt able to proceed in Court (Plea Tr. 5:23-6:1), and then stated, "I just want to be clear, because if you tell me now you're OK, and sometime later you don't like the sentence you get and you try to tell Judge Marrero or some other court that you weren't feeling well and you weren't right in the head today, you are not going to be able to.  So if you don't feel well, we can do this next week or whenever.  Are you sure you're able to go forward today?" to which Jimenez responded "Yes. Today, your Honor" (Plea Tr. 6:2-9).  Magistrate Judge Peck also asked Jimenez, "Now, I don't know what sentence you may be hoping for as you stand here today, but do you understand that even if the sentence you get is more severe than that, you will still be bound by your guilty plea and not allowed to withdraw it?" to which Jimenez responded "Yes, sir."  (Plea Tr. 13:1-6.)

After making these statements, and after the Court advised him of the consequences of pleading guilty, Jimenez reaffirmed that he wished to plead guilty and that he was doing so freely and voluntarily.  (Plea Tr. 18:11-18.)  He then testified that he and another person agreed to give protection for an illegal drug transaction involving more than five kilograms of cocaine; that they met several times in January and February 2010 to talk about arrangements for this transaction; and that he knew what he was doing was wrong.  (Plea Tr. 19:5-16.)  Magistrate Judge Peck determined that Jimenez was mentally competent to enter his plea, and recommended that the Court accept Jimenez's plea of guilty to Count One of the superseding indictment as factually based and made freely, voluntarily, and knowingly.  (Plea Tr. 20:7-15.)

Two days later, on November 4, 2011, Jimenez sent a letter to the Court asking to withdraw his guilty plea, on the grounds that he was taking strong medications at the time he entered his plea, and had not really known what he was doing. (ECF No. 71.) This Court held a conference on November 21, 2011 to discuss this issue and to discuss Jimenez's satisfaction with counsel, at which Jimenez confirmed his satisfaction with his representation, reaffirmed that he was guilty, and stated a desire to maintain his guilty plea. (ECF No. 77 ("Nov. 21, 2011 Tr.") 4:8-10, 5:2-4, 6:9-10, 8:17-9:12.) During the conference, the Court took a 15-minute recess to allow Geduldig to speak with Jimenez regarding the consequences of not making a motion to withdraw his guilty plea, and to enable Jimenez to speak with Peter Brill, another criminal defense attorney present in the courtroom, to determine that Jimenez's desire for continued representation by Geduldig was knowing and voluntary. (Nov. 21, 2011 Tr. 9:13-10:2, 10:17-22.) After this recess, Jimenez again stated that he would not withdraw his guilty plea, and that he was satisfied with his representation by Geduldig. (Nov. 21, 2011 Tr. 11:6-12:2.) Brill stated that he did not have any reason to believe that Jimenez should not be represented by Geduldig at that time. (Nov. 21, 2011 Tr. 12:3-6.) The Court then confirmed Jimenez's competency to make these decisions by a asking a series of question to him, Geduldig, and the Government. (Nov. 21, 2011 Tr. 12:8-13:15.) Jimenez again entered a plea of guilty (Nov. 21, 2011 Tr. 13:16-18), and stated, among other things, the following:

- That he had a sufficient opportunity to discuss his case with Geduldig. (Nov. 21, 2011 Tr. 13:24-14:2.)

- That nobody—including the Government—could make any promises to him about what the length of his sentence would be. (Nov. 21, 2011 Tr. 15:11-15, 16:25-17:3.)

- That he was facing a maximum sentence of life imprisonment. (Nov. 21, 2011 Tr. 17:4-15.)

- That he was in fact guilty of the crime with which he was charged. (Nov. 21, 2011 Tr. 18:9-11.)

The Court then determined that Jimenez was continuing to plead guilty voluntarily, accepted his guilty plea, and affirmed the guilty plea he submitted on November 2, 2011. (Nov. 21, 2011 Tr. 18:12-21.)

On January 31, 2012, Jimenez again wrote to the Court asking to withdraw his guilty plea, this time on the basis that his counsel "force[d]" him to plead guilty, and requesting that the Court mandate psychological testing. (ECF No. 82.) This Court held a conference to discuss these issues on February 10, 2012, during which Geduldig stated that he had spoken with Jimenez on two occasions the day prior and that Jimenez had told him that he did not wish to withdraw his guilty plea. (ECF Nos. 84, 88 ("Feb. 10, 2012 Tr.") 3:16-4:5.) Because Jimenez was visibly upset at the hearing due to the recent passing away of his mother (see Feb. 10, 2012 Tr. 2:22-3:11; Pet'r's Br. at 7), the Court adjourned the hearing before ruling on Jimenez's request to withdraw his plea (ECF No. 84; Feb. 10, 2012 Tr. 3:6-11, 4:13-

17, 5:4-6).  Before adjourning the hearing, the Court stated, "And it is, Mr. Jimenez, not your emotional state today which governs whether or not your guilty plea in the past is effective or not; it was your emotional state and your competency as of the date and dates upon which you entered your pleas.  And I would just note for the record that the pleas that Mr. Jimenez previously entered were done after a finding of competency at the time that the pleas were entered."  (Feb. 10, 2012 Tr. 4:21-5:3.) The Court then issued a written order denying Jimenez's request, explaining that the Government had showed that permitting Jimenez to withdraw his plea at that time would be prejudicial, and that Jimenez had failed to raise a significant question as to the voluntariness of his pleas.  (ECF No. 84.)

On April 3, 2012, the Court sentenced Jimenez to 127 months' imprisonment, plus five years of supervised release; the Court imposed seven months above the minimum of the applicable Sentencing Guidelines range due to Jimenez's breach of the public trust through his use of his position as a New York City auxiliary police officer in connection with the commission of the drug trafficking crime for which he was charged.  (ECF No. 117 ("Sentencing Tr.") 15:17-16:1.)

## II.  LEGAL STANDARDS

### A.  Bar on Raising Issues That Were Raised or Could Have Been Raised on Direct Appeal

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."  United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011).  "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or

(2) actual innocence." Id.  This procedural bar "does not generally apply to claims of ineffective assistance of counsel." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).

B.      Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his or her counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) he or she was prejudiced by counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[4]  Strickland v. Washington. 466 U.S. 668, 687-88, 694 (1984).

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89.  As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way."  United States v.

---

[4] Jimenez's argument that he need not demonstrate prejudice under United States v. Cronic, 466 U.S. 648 (1984), is misplaced.  In Cronic, the Supreme Court held that prejudice is presumed where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. at 659 (emphasis added).  Jimenez does not contend that defense counsel's failure was total and complete—rather, he asserts merely that his counsel's investigation was not thorough enough, and he contests only his counsel's alleged failure to assert one particular affirmative defense.  Strickland thus provides the appropriate standard.

Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different.  Strickland, 466 U.S. at 694.  More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  Id. at 693.

III.   DISCUSSION

In sum and substance, Jimenez argues that he received ineffective assistance of counsel because his lawyer failed to discover and assert an entrapment defense, or to inform him of the same.  He also argues that he did not plead guilty knowingly and voluntarily, allegedly because his lawyer forced him to plead guilty and he did not understand the consequences of his plea.  Both arguments lack merit, and Jimenez's petition is accordingly denied.

A.   Entrapment

Jimenez's attorney did not provide ineffective assistance of counsel if he failed to assert or inform Jimenez of an entrapment defense.  Whether he informed Jimenez of such defense or not is ultimately irrelevant.  An entrapment defense was not supported by the evidence.

10

1.      Legal standards.

        a)      Reasonable investigation.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Rosario v. Ercole, 601 F.3d 118, 130 (2d Cir. 2010) (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003)).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.  "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689).

"[A] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting DeLuca v. Lord, 77 F.3d 578, 588 n.3 (2d Cir. 1996)).  "The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea." Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991).

        b)      Entrapment.

To successfully assert the defense of entrapment, a defendant must demonstrate, by a preponderance of the evidence, "(1) government inducement of

the crime, and (2) lack of predisposition on the defendant's part." <u>United States v.</u> <u>Bala</u>, 236 F.3d 87, 94 (2d Cir. 2000) (quoting <u>United States v. Salerno</u>, 66 F.3d 544, 547 (2d Cir. 1995)).  "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity' to do so." <u>Salerno</u>, 66 F.3d at 547 (quoting <u>United States v.</u> <u>Harvey</u>, 991 F.2d 981, 992 (2d Cir. 1993)).  Predisposition may be shown by evidence of "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." <u>Salerno</u>, 66 F.3d at 548 (quoting <u>United States v. Valencia</u>, 645 F.2d 1158, 1167 (2d Cir. 1980)).

        2.    <u>Analysis.</u>

Jimenez argues that his attorney failed to conduct a reasonably careful pretrial investigation, and that if he had done so, he would have discovered that Jimenez had a viable entrapment defense.  According to Jimenez, this defense would have provided a basis for dismissal of the indictment, or different advice regarding a change of plea.  Jimenez's positions lack merit.

First, assuming <u>arguendo</u> that Jimenez's counsel decided not to pursue an entrapment defense and not to inform Jimenez of the same, these decisions were reasonable given the record in this case and the low likelihood of success for asserting such a defense.  The record in this case demonstrates that Jimenez was willing to serve as an armed drug courier for individuals he believed to be drug

dealers from the very first time he spoke with a confidential government informant, and in several other meetings he expressed a willingness to do so and to help facilitate narcotics transactions.  Indeed, Jimenez repeatedly expressed—both through words and actions—his willingness to participate in the conspiracy in the months prior to his arrest, and his lack of a prior criminal history does nothing to change this.  Even if, as Jimenez contends, he had to be convinced to participate in the scheme through others' persistent requests, it was reasonable for Jimenez's counsel to conclude that Jimenez  had shown "a willingness to commit the crime" as demonstrated by a "ready response to the inducement."  <u>Salerno</u>, 66 F.3d at 548.  Decisions by Jimenez's counsel not to further investigate facts relating to this defense, not to assert the defense, and not to inform Jimenez of the defense's availability when counseling him on whether to plea would thus have been reasonable, especially in light of the fact that the entrapment defense is risky and rarely successful.  <u>See</u>, <u>e.g.</u>, <u>United States v. Balis</u>, Nos. 08 Civ. 5637(GEL), 03 Cr. 1028(GEL), 2009 WL 1117274, at *6 (S.D.N.Y. Apr. 24, 2009) (The entrapment defense is risky because it "in effect admits that the defendant engaged in criminal conduct, and attempts to explain away the commission of criminal acts," and generally "dilute[s] the force of a denial of wrongdoing.").

In any event, even assuming Jimenez were able to show that his attorney's conduct was somehow deficient, he fails to show that he suffered prejudice as required under <u>Strickland</u>.  "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the

resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). As explained above, in light of the record here, it is unlikely that Jimenez would have been entitled to a jury instruction on entrapment, let alone that he would have succeeded on an entrapment defense at trial.

In sum, Jimenez's counsel did not provide ineffective assistance of counsel by failing to discover and assert an entrapment defense in order to get the indictment dismissed or during plea negotiations, or by failing to inform Jimenez of the same when recommending that he plead guilty.[5]

### B.   Other Issues Concerning Jimenez's Guilty Plea

Jimenez argues that his plea of guilty was not made voluntarily or with understanding of its consequences. He asserts that his lawyer forced him to plead guilty, and that he did not understand the consequences of his plea because he was "expecting less time imprisonment than the time [he] was sentenced for." (Pet. at 5.) These arguments are meritless.

---

[5] In his petition, Jimenez also argues that he was provided ineffective assistance of counsel because his counsel failed to argue "sentencing entrapment." (Pet. at 5.) It is unclear whether this argument is aimed at Geduldig or Jimenez's counsel on appeal, Georgia J. Hinde. In any event, it was not objectively unreasonable for Jimenez's counsel not to argue sentencing entrapment given that the Second Circuit has not recognized sentencing entrapment or sentencing manipulation as a basis for post-conviction relief. See, e.g., United States v. Cromitie, 727 F.3d 194, 226 (2d Cir. 2013). Further, "even where [sentencing entrapment] has been approved in theory, 'its potential application has been limited to outrageous conduct which overcomes the [defendant's] will.'" United States v. Gomez, 103 F.3d 249, 256 (2d Cir. 1997) (quoting United States v. Knecht, 55 F.3d 54, 57 (2d Cir. 1995)). Jimenez was the target of a garden-variety sting operation, and there is no evidence in the record before the Court of outrageous conduct on the part of government agents. Jimenez's argument that he was targeted by law enforcement agents due to his emotional fragility and asserted mental illness is not borne out by the record before the Court. Accordingly, even assuming arguendo that sentencing entrapment is a valid basis for relief in the Second Circuit, Jimenez suffered no prejudice as his counsel's assertion of this defense was not reasonably likely to have altered the result of his proceedings.

14

First, insofar as Jimenez's arguments here do not concern ineffective assistance of counsel, Jimenez could have raised them on direct appeal, yet he failed to do so.  Further, he has proffered no cause for this procedural default. Accordingly, these arguments are procedurally barred.

In any event, Jimenez's arguments here fail on the merits, as they are flatly contradicted by the record.  At both his initial plea hearing and the hearing on November 4, 2011, the Court engaged in extensive colloquies with Jimenez to confirm that he was pleading guilty freely, voluntarily, and knowingly.  Further, the Plea Agreement itself, which Jimenez signed and which he affirmed on the record that he understood, clearly provides for a stipulated Guidelines range of 120 to 135 months' imprisonment.  Jimenez said at the plea and at the November 4, 2011 hearing that he discussed the Plea Agreement with his counsel and understood that the count to which he was pleading guilty allowed for a maximum sentence of life imprisonment, and at the initial plea hearing he stated that he understood that the agreement allowed for a mandatory minimum term of ten years' imprisonment. The Court also confirmed Jimenez's understanding of his Guidelines sentencing range, and that no other promises outside of the plea had been made to him about what his sentence would be.  Petitioner's "dissatisfaction" (Pet'r's Br. at 5) with his sentence of 127 months does not negate his voluntary and knowing agreement to the plea, nor does it suggest that his counsel was deficient in advising him to accept it.

15

Further, even if Jimenez were able to show that his attorney's conduct here was somehow deficient, he fails to show that he suffered prejudice, as required under Strickland. This required showing is further complicated in cases like this where a petitioner makes statements in open court that reflect his knowing and voluntary waiver of constitutional rights and affirms his desire to proceed with a guilty plea. Courts afford "a strong presumption of verity" to such statements. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Jimenez received a sentence of 127 months' imprisonment, which is far short of the statutory maximum of life, and well within the stipulated Guidelines range of 120 to 135 months' imprisonment. When the Court reviewed the Plea Agreement with Jimenez, he affirmed that he understood that he was waiving his right to appeal or engage in post-conviction litigation if his sentence was 135 months or less (which it was). The Plea Agreement (negotiated by Geduldig) allowed Jimenez to plead guilty to only one count of several and to avoid a potential life sentence. Such a benefit is far from prejudice, especially in light of the fact that Jimenez allocuted to his crimes at his plea and apologized for his actions at his sentencing. (Plea Tr. 19:5-10; Sentencing Tr. 8:15-17.)

IV.   CONCLUSION

For the reasons set forth above, Jimenez's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The

16

Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial

of this motion would not be taken in good faith.  See Feliz v. United States, Nos. 01

Civ. 5544(JFK), 00 CR. 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

   The Clerk of the Court is directed to terminate this action.

   SO ORDERED.

Dated:      New York, New York
            August 31, 2015

_____
         KATHERINE B. FORREST
         United States District Judge

Copy to:

Rafael Jimenez
63310-054
Moshannon Valley Correctional Center
Unit C6
555-I Geo Drive
Philipsburg, PA 16866